# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KIMBERLY WALKER,
                    Appellant,

          v.

UNITED STATES POSTAL SERVICE,
                    Agency.

DOCKET NUMBERS
CH-0752-20-0262-I-1
CH-0752-20-0402-I-1

DATE: July 27, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Albert Lum, Brooklyn, New York, for the appellant.

Glenn L. Smith, Grand Rapids, Michigan, for the appellant.

Deborah W. Carlson, Chicago, Illinois, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

¶1      The appellant has filed two petitions for review of two initial decisions, both cases addressing demotion actions.  First, the appellant has filed a petition for review in *Walker v. U.S. Postal Service*, MSPB Docket No. CH-0752-20-0262-I-1 (*Walker* 1), challenging the initial decision which, in part, found that the

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

agency did not have to return the appellant to her former position or an equivalent managerial position after it rescinded its first demotion action. The appellant has also filed a petition for review in *Walker v. U.S. Postal Service*, MSPB Docket No. CH-0752-20-0402-I-1 (*Walker* 2), challenging the initial decision which sustained the agency's reissued demotion action. For the reasons discussed below, we GRANT the appellant's petition for review in *Walker* 2, REVERSE the *Walker* 2 initial decision, and order the agency to cancel the second demotion action. We DENY the appellant's petition for review of *Walker* 1 because the appeal is MOOT. We RE-JOIN the two appeals for adjudication.[2]

## BACKGROUND

¶2      The appellant held the EAS-22 position of Customer Service Manager at Graceland Station in Chicago, Illinois. *Walker v. U.S. Postal Service*, MSPB Docket No. CH-0752-20-0402-I-1, Initial Appeal File (0402 IAF), Tab 6 at 39. On February 14, 2020, the agency issued a decision demoting the appellant, effective February 29, 2020, to an EAS-17 Supervisor of Distribution Operations position based on a charge of negligent performance of duties. *Walker v. U.S. Postal Service*, MSPB Docket No. CH-0752-20-0262-I-1, Initial Appeal File (0262 IAF), Tab 1 at 12-17. The appellant then filed a Board appeal, which will be referred to as *Walker* 1, challenging the demotion. 0262 IAF, Tab 1. While *Walker* 1 was pending before the administrative judge, the agency issued an April 9, 2020 letter rescinding the demotion action. 0262 IAF, Tab 20 at 11. In that letter, the agency stated that it was not rescinding the proposed demotion, and that it would issue another decision at a later date. *Id.* However, the parties continued to argue in *Walker* 1 regarding whether the agency had fully rescinded

---

[2] Although the appeals were joined while they were pending in front of the administrative judge, the administrative judge issued separate initial decisions, which necessitated that the appeals were severed. Because joining the appeals will promote judicial efficiency and expedite the processing of the cases, and will not adversely affect the interests of the parties, we hereby re-join the appeals for adjudication. 5 C.F.R. § 1201.36.

the demotion by returning the appellant to the status quo ante. 0262 IAF, Tabs 20-21, 26-27, 29-30.

¶3    While *Walker* 1 was still pending in front of the administrative judge, the agency issued a second decision on May 21, 2020, demoting the appellant to an EAS-17 position. 0402 IAF, Tab 4 at 32-36, 45-49; Hearing Recording (HR) (testimony of the appellant). The record contains two decision letters for the reissued demotion, both with an issuance date of May 21, 2020, but the first letter was signed by the deciding official on May 6, 2020 (First Decision Letter), and the second letter was signed by the deciding official on May 21, 2020 (Second Decision Letter). 0402 IAF, Tab 4 at 32-36, 45-49. Both decision letters were sent to the appellant. HR (parties' discussion prior to closing arguments). Subsequently, the appellant filed a Board appeal, which will be referred to as *Walker* 2, challenging the agency's reissued demotion action. 0402 IAF, Tab 1. The administrative judge joined *Walker* 1 and *Walker* 2 and proceeded to adjudicate the cases together. 0402 IAF, Tab 10. However, as noted, she issued two separate initial decisions.

¶4    In *Walker* 1, the administrative judge found that the agency had not fully rescinded the February 14, 2020 decision and ordered that the agency take additional actions in order to fully rescind the demotion, including paying the appellant additional monies and removing the Postal Service form 50 (PS-50) memorializing the demotion from the appellant's personnel file. 0262 IAF, Tab 52, Initial Decision (0262 ID) at 8-9. She also found that, while the agency did not return the appellant to her former EAS-22 position or an equivalent position, it was not required to do so because it had presented a compelling or overriding interest. 0262 ID at 5-6. The appellant has filed a petition for review in *Walker* 1 challenging the administrative judge's finding that the agency was not required to return her to her former EAS-22 position or an equivalent position. *Walker v. U.S. Postal Service*, MSPB Docket No. CH-0752-20-0262-I-1, Petition for Review (0262 PFR) File, Tab 3 at 5. The agency has responded

in opposition to the appellant's petition for review in *Walker* 1. 0262 PFR File, Tab 5.

¶5 In *Walker* 2, the administrative judge sustained the reissued demotion on the merits and found that the appellant did not establish a violation of her due process rights. 0402 IAF, Tab 58, Initial Decision (0402 ID). On review in *Walker* 2, the appellant argues: (1) the administrative judge erred in not finding that the agency was prohibited from proceeding with the reissued demotion before fully rescinding the first demotion action; (2) the administrative judge erred in finding that the First Decision Letter was the agency decision letter, and that the agency violated the appellant's due process rights because the decision letters cite to aggravating factors not contained within the proposal notice; and (3) the penalty exceeded the bounds of reasonableness. *Walker v. U.S. Postal Service*, MSPB Docket No. CH-0752-20-0402-I-1, Petition for Review (0402 PFR) File, Tab 3. The agency did not respond to the petition for review in *Walker* 2.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6 As discussed below, we first find that the agency's reissued demotion action in *Walker* 2 cannot stand in light of the agency's harmful error of issuing two different written decisions with conflicting information, both signed by the deciding official and provided to the appellant as the agency decision, and it is impossible to discern which letter was intended as the agency decision. Regarding *Walker* 1, we deny the appellant's petition for review as moot because there is no further relief that can be granted to the appellant.

The issuance of two decision letters constitutes a violation of 5 U.S.C. § 7513.

¶7 When an agency takes an adverse action against an employee pursuant to chapter 75, the employee against whom the action is proposed is entitled to, among other things, "a written decision and the specific reasons" for the decision. 5 U.S.C. § 7513(b)(4). Here, there are two signed written decisions in the record. 0402 IAF, Tab 4 at 32-36, 45-49. During the proceedings below in *Walker* 2, the

agency claimed that the agency's decision was the First Decision Letter, signed on May 6, 2020, and that the Second Decision Letter, signed on May 21, 2020, was a draft that was mistakenly included in the agency file. HR (parties' discussion prior to closing arguments); 0402 IAF, Tab 54 at 4-5. The administrative judge, in the initial decision, accepted the agency's explanation, and found that this First Decision Letter was the agency's decision, noting that the appellant had attached a copy of the First Decision Letter to her initial appeal. 0402 ID at 3 n.3. The appellant, on review, asserts that the administrative judge's finding was incorrect, arguing instead that the Second Decision Letter was the agency's decision, and had been issued by the agency "to correct the due process violations in the first letter." 0402 PFR File, Tab 1 at 9. As explained below, because the record contains conflicting evidence, we cannot discern what document is the agency decision required by 5 U.S.C. § 7513(b), and therefore conclude that the agency effectively failed to issue a final written decision in violation of 5 U.S.C. § 7513(b).

¶8      Looking first at the letters themselves, we find no definitive evidence that identifies which letter is the actual agency decision. The two decision letters have the same issuance date, i.e., May 21, 2020, and both letters were signed by the deciding official—the First Decision Letter signed on May 6, 2020, and the Second Decision Letter signed on May 21, 2020.[3] 0402 IAF, Tab 4 at 32, 36, 45, 48. The agency sent both letters to the appellant, and the appellant received both letters. *Id.* at 43-44, 49; 0402 IAF, Tab 1 at 10-14; HR (parties' discussion prior to closing arguments). The First Decision Letter states that the appellant will be demoted to the position of EAS-17 Supervisor of Customer Services, effective May 23, 2020. 0402 IAF, Tab 4 at 34. The Second Decision Letter states that the appellant will be demoted to the position of EAS-17 Supervisor of Distribution

---

[3] Although the signature date on the First Decision Letter is blurry, the deciding official in her testimony confirmed that it appeared she signed the letter on May 6, 2020. HR (testimony of the deciding official).

Operations, effective February 15, 2020.[4] *Id.* at 47. Additionally, as we discuss in more detail below, the First Decision Letter and the Second Decision Letter contain differing narratives. *Id.* at 32-36, 45-49.

¶9 The testimony of the witnesses at the hearing is not any clearer than the written record. During the deciding official's testimony, the appellant's attorney first referred her to the Second Decision Letter, which the deciding official reviewed, and proceeded to testify as if the Second Decision Letter was the agency's decision. HR (testimony of the deciding official). In fact, the deciding official testified that everything she considered was contained in the Second Decision Letter, thus demonstrating that she believed the Second Decision Letter was the agency's decision. *Id.* It was only when the appellant's attorney directed her to the First Decision Letter and proceeded to ask questions about that document that it dawned on the deciding official and the agency attorney that there was an issue. *Id.* Then, the deciding official could not clearly identify which decision letter was the actual decision until after conferring with the agency's attorney, at which point she claimed that the First Decision Letter constituted the agency's decision. *Id.* The appellant, during her testimony, also indicated that she was confused as to which letter constituted the agency's decision. HR (testimony of the appellant).

¶10 In an effort to explain the two decision letters, the agency asserts that the Second Decision Letter was merely a draft and that the First Decision letter is the

---

[4] We acknowledge that the effective date set forth in the Second Decision Letter predates the date of the letter by over 3 months. As discussed below, this further adds to the confusion regarding the agency's decision. As set forth previously, the decision in *Walker* 1 was issued on February 14, 2020, and that action was effective February 29, 2020. 0262 IAF, Tab 1 at 14. Thus, it does not appear that the Second Decision Letter was somehow confused with the agency decision in *Walker* 1.

agency's decision regarding the appellant's demotion.[5] There are several pieces of evidence that undermine this assertion.

¶11 First, the Second Decision Letter was signed by the deciding official nearly two weeks after the First Decision Letter, and was sent to the appellant via priority mail. 0402 IAF, Tab 4 at 48-49. In addition, the deciding official initially testified about the Second Decision Letter as if it was the agency decision, and only claimed it was a draft after conferring with the agency's attorney. HR (testimony of the deciding official). Furthermore, the First Decision Letter and the Second Decision Letter contain statements that conflict with each other and with the personnel action the agency actually took. The First Decision Letter, i.e., the effective decision according to the agency, states that appellant would be demoted to the position of EAS-17 Supervisor of Customer Services effective May 23, 2020. 0402 IAF, Tab 4 at 34. However, the appellant was never placed in that position. HR (testimony of the appellant, testimony of the deciding official). Meanwhile, the Second Decision Letter states that the appellant would be demoted to the position of EAS-17 Supervisor of Distribution Operations effective February 15, 2020, which was 3 months prior to the issuance of the decision. 0402 IAF, Tab 4 at 47. In actuality, the agency demoted the appellant to the position of Supervisor of Distribution Operations, as stated in the Second Decision Letter, but there is no indication that her demotion was retroactive.[6] HR (testimony of the appellant, testimony of the deciding official).

¶12 Finally, despite the agency's assertion that the First Decision Letter was the agency decision, in *Walker* 1, when the agency attorney responded to the administrative judge's order regarding the rescission of the February 14, 2020 demotion decision, she relayed to the administrative judge that the agency had reissued the demotion, and attached a copy of the Second Decision Letter, despite

---

[5] The agency has offered no explanation as to how the errors set forth in this appeal occurred.

[6] A copy of the PS-50 reflecting the reissued demotion is not in the record.

the fact that she asserted in *Walker* 2 that the First Decision Letter was the agency decision. 0262 IAF, Tab 20 at 6, 16-20; 0402 IAF, Tab 54 at 4-5; HR (parties' discussion prior to closing arguments, agency's closing argument, testimony of the deciding official).

¶13     Thus, contrary to the administrative judge's holding, we do not find the agency's claim that the Second Decision Letter was a mere draft to be persuasive in light of the evidence undermining such an assertion. 0402 ID at 3 n.3. In sum, we cannot discern whether the First Decision Letter or the Second Decision Letter is the agency's controlling decision, and it does not appear the parties can discern this fact either. Therefore, in effect, by issuing two decisions with differing information, the agency failed to issue a written decision regarding the appellant's demotion. We conclude that the agency's failure constitutes a violation of 5 U.S.C. § 7513(b).

<u>The agency's issuance of two decisions constitutes harmful error and therefore the demotion must be reversed.</u>

¶14     Having determined that the agency violated 5 U.S.C. § 7513(b), we must now consider whether the appellant was harmed by the agency's error. As discussed below, we find that she was harmed.

¶15     Under 5 U.S.C. § 7701(c)(2)(A), the Board cannot sustain an agency's decision if the employee "shows harmful error in the application of the agency's procedures in arriving at such decision." *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681 (1991). The Board has concluded that the "harmful error" standard is applicable to our review of an agency's failure to comply with a statutory procedure under 5 U.S.C. § 7513.[7] *Baracco v. Department of Transportation* 15 M.S.P.R. 112, 119 (1983); *see Robinson v. Department of the*

---

[7] The appellant received notice of the charges, the materials relied upon, and an opportunity to respond. 0402 IAF, Tab 4 at 71-75. Thus, the circumstances of this appeal do not implicate the requirements for constitutional due process. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985).

*Treasury*, 96 M.S.P.R. 600, ¶¶ 9-13 (2004), *aff'd*, 135 F. App'x 423 (Fed. Cir. 2005) (applying the harmful error analysis to the agency's failure to comply with 5 U.S.C. § 7513(b)); *Rawls v. U.S. Postal Service*, 94 M.S.P.R. 614, ¶¶ 22-24 (2003) (same), *aff'd*, 129 F. App'x 628 (Fed. Cir 2005); *Williams v. U.S. Postal Service*, 68 M.S.P.R. 150, 153-54 (1995) (same). To prove harmful error, an appellant must "prove that any procedural errors substantially prejudiced his rights by possibly affecting" the outcome. *Stephen*, 47 M.S.P.R. at 681 (quoting *Cornelius v. Nutt*, 472 U.S. 648, 661 (1985)).

¶16     Therefore, the overarching question of a harmful error analysis is whether a procedural violation by the agency caused actual harm to the appellant and prejudiced her in some manner. *See Stephen*, 47 M.S.P.R. 672, 682-83; *see also Torres v. U.S. Postal Service*, 35 M.S.P.R. 655, 660 (1987) ("In considering the effects of agency procedural errors under 5 U.S.C. § 7513, the Board focuses on whether the employee's ability to defend against the adverse action was impaired by the error, or whether the error otherwise had a likely effect on the agency's action so as to constitute harmful error under 5 U.S.C. § 7701(c)(2)(A)."). Or, whether the agency's error, "casts sufficient doubt on the reliability of the agency's factfinding or decision." *Smith v. U.S. Postal Service*, 789 F.2d 1540, 1545 (Fed. Cir. 1986) (citing *Cornelius*, 472 U.S. at 663). Nothing in the Board's harmful error analysis limits the question as to whether the harm occurred before the agency or the Board.

¶17     In this case, the outcome in both agency decision letters is the same—the appellant was demoted in both letters—but there is a question regarding whether the appellant was harmed in her ability to appeal the agency action because of the two decision letters. As explained above, the two agency decisions include different effective dates, demote the appellant to different positions, and were signed on different dates. 0402 IAF, Tab 4 at 32-36, 45-49. However, the decisions also differ in the narrative explaining why the deciding official sustained the demotion. For instance, the First Decision Letter states that the

deciding official considered the fact that the appellant was aware of the intense scrutiny the station was under by a member of Congress, the Postmaster General, and the local media regarding service issues and specifically the problem of delayed mail. *Id.* at 33. The Second Decision Letter, on the other hand, has no reference to this scrutiny. *Id.* at 45-49. The First Decision Letter also includes a more detailed summary of the appellant's arguments in her written responses, including a specific reference to her April 20, 2020 supplemental written response. *Id.* at 32-33. The Second Decision Letter, on the other hand, contains a single generic statement summarizing the appellant's reply, and does not contain any reference to the appellant's April 20, 2020 supplemental written response. *Id.* at 45. Thus, the two decisions contain different information about not only the practical aspects of the demotion, but what exactly the deciding official reviewed and considered in coming to her decision.

¶18    These differences are not trivial. There are substantive differences as to what the deciding official considered and reviewed in coming to her conclusion. 0402 IAF, Tab 4 at 32-36, 45-49. Thus, we do not see how the appellant can litigate her case before the Board when she cannot be sure of which decision she is being held to. Further, the Board cannot carry out its statutory duty to review the agency's decision when we cannot discern what decision to review. Thus, we find that the appellant suffered actual harm as a result of the agency's error because it de facto foreclosed her from seeking the Board's review of the agency's decision. We also find that the issuance of two differing written decisions casts "sufficient doubt" on the reliability of the agency's decision, because it is impossible to determine which information contained in the decisions is the correct information. Thus, based upon the unique facts of this case, we find that the agency committed harmful error and reversal of the demotion action is warranted. Accordingly, the agency must restore the appellant to her EAS-22 Station Manager position. *Hess v. U.S. Postal Service*, 123 M.S.P.R. 183, ¶ 5 (2016).

The *Walker* 1 appeal is moot.

¶19     Although an action may be within the Board's jurisdiction, subsequent events may render an appeal moot and foreclose the Board's review. *Rodriguez v. Department of Homeland Security*, [112 M.S.P.R. 446](), ¶ 12 (2009). A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome of the case. *Hess v. U.S. Postal Service,* [124 M.S.P.R. 40](), ¶ 8 (2016). Mootness can arise at any stage of litigation, and an appeal will be dismissed as moot if, by virtue of an intervening event, the Board cannot grant any effectual relief in favor of the appellant. As discussed below, because we cannot grant any effectual relief to the appellant on the issue presented on review in *Walker* 1, the appeal is moot and accordingly we deny the petition for review.

¶20     As discussed above, the agency issued a decision on February 14, 2020, demoting the appellant effective February 29, 2020. 0262 IAF, Tab 4 at 32-34. On April 9, 2020, the agency notified the appellant that it was rescinding the February 14, 2020 decision letter. 0262 IAF, Tab 20 at 11. On May 21, 2020, the agency reissued the decision letter demoting the appellant, which went into effect on May 23, 2020.[8] 0402 IAF, Tab 4 at 32-36, 45-49.

¶21     In *Walker* 1, the administrative judge ordered the agency to fully rescind the February 2020 demotion action, ordering the agency to take specific additional actions to make the appellant whole, i.e., ordering the agency to rescind the PS-50 memorializing the demotion, and pay the appellant additional monies owed.[9]

_____

[8] The record does not have a copy of the PS-50 memorializing the reissued demotion. However, the agency, in its prehearing submissions, has asserted that the reissued demotion went into effect on May 23, 2020. 0402 IAF, Tab 21 at 12. The appellant does not contest this date, and there is no evidence in the record to contradict this date. Therefore, we accept that the effective date of the reissued demotion was May 23, 2020.

[9] In her petition for review, the appellant does not allege that the agency failed to comply with the administrative judge's orders. To the extent that the appellant contends that the agency has failed to comply with the administrative judge's order, the

0262 ID at 8-9. On review in *Walker* 1, the appellant only contests the administrative judge's finding that the agency did not have to restore her to her former EAS-22 position or the nearest equivalent position after it rescinded the February 2020 demotion. 0262 PFR File, Tab 3 at 5. In *Walker* 2, the appellant further argues that the reissued demotion could not be sustained because she was not fully restored to the status quo ante following the rescission of the decision in *Walker* 1. 0402 PFR File, Tab 3 at 6-9. Thus, the only issue raised in *Walker* 1 is whether the appellant should have been physically returned to her former EAS-22 position or an equivalent position between the rescission of the first demotion action, i.e., April 9, 2020, and the effective date of the reissued demotion, i.e., May 23, 2020.

¶22 Even if we were to agree with the appellant's arguments, we can discern no tangible remedy we could grant the appellant that would correct the agency's failure to physically return her to her former EAS-22 position or an equivalent position for a period of 6 weeks in 2020. The appellant has already received relief from the administrative judge such that, on paper, it appears that she was returned to the EAS-22 position. *Id.* Additionally, because the agency committed harmful error in *Walker* 2, we are reversing the second demotion action and, among other things, ordering the appellant's return to her EAS-22 Station Manager position. Thus, to the extent that the appellant was relying on the status quo ante argument to reverse the second demotion, we have granted her requested relief, albeit on different grounds. As the Board does not have the power to reverse time, we discern no further effectual relief that we could grant in favor of the appellant for the issue presented in *Walker* 1 other than what has already been ordered. 0262 PFR File, Tab 3. As there is no further effectual relief to grant in Walker 1, the appeal is moot and accordingly we deny her petition for review.

---

appellant should file a petition for enforcement with the regional office. 5 C.F.R. § 1201.182(a).

**ORDER**

¶23        We ORDER the agency to cancel the demotion action and restore the appellant to her EAS-22 Station Manager position effective May 23, 2020.  The agency must complete this action no later than 20 days after the date of this decision.

¶24        We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service regulations, as appropriate, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶25        We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶26        No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶27        For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE OF APPEAL RIGHTS[10]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[11]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                        /s/ for

                                      Jennifer Everling
                                      Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.